OPINION OF THE COURT
Herman Cahn, J.
Petitioners, by this turnover proceeding, challenge the forfeiture of moneys seized by the Attorney-General. The moneys were seized from a firm convicted of scheme to defraud, in connection with the fraudulent sales of a commodity. The moneys were seized from the firm’s bank account, and represent the proceeds of the firm’s activities over a four-month period.
In this turnover proceeding brought pursuant to CPLR 5225 (b) petitioners seek a judgment directing respondent to pay over certain sums of money to them on the ground that respondent possesses such sums which are either; (1) the property of the judgment debtor; (2) sums to which petitioners have title; or (3) sums to which petitioners’ possessory interest is superior to that of respondent.
Respondent is the State of New York. The judgment debtor is Mineral Resources Corporation (MRC). Petitioners apparently obtained a default judgment against MRC. In an action in this court entitled People v Mineral Resources Corp. (indictment No. *391 4300/81), over which I presided, MRC and 29 of its officers and employees were convicted of the crimes of scheme to defraud, conspiracy, and related crimes.
The State investigation of the affairs of MRC which led to the prosecution was conducted by the Attorney-General. During the course of the investigation, the Attorney-General obtained a search warrant, permitting the search of MRC’s premises and the seizure of various documents and business records. When the warrant was executed, records relating to a bank account of MRC were seized, and the account itself was effectively frozen. It contained approximately $250,000.
During the trial, the Attorney-General proved that MRC had defrauded 144 individuals who had been its customers of approximately $1,140,000. At the time of sentence, several of the individual defendants agreed to make some payments toward restitution. The bulk of the money available for restitution is the sum of approximately $250,000 seized from MRC as aforesaid. The Attorney-General has been directed to formulate a written equitable restitution program.
Petitioners brought an action for money damages against MRC subsequent to the criminal action. A default judgment was entered in favor of petitioner Stuhler for $40,504.17 and petitioner Reardin for $11,596.32, against MRC. By the instant petition, turnover of moneys currently being held by respondent State of New York is sought.
CPLR 5225 (b) in relevant part provides: “Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money * * * in which the judgment debtor has an interest, or against a person who is a. transferee of money * * * from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor’s rights to the property are superior to those of the transferee, the court shall require such person to pay the money * * * to the judgment creditor”.
In analyzing petitioners’ right to the funds, under CPLR 5225 (b), the first question to be answered is whether the judgment debtor, MRC, has an interest in the funds. It is quite apparent from the statute cited that petitioners’ rights in the funds are derived from, and are therefore no better than, those of the judgment debtor. The funds seized from MRC’s bank account, currently held by respondent, were illegally obtained by MRC. This was conclusively established in the aforementioned criminal proceeding in which MRC was found guilty. Evidence was *392 presented at trial that aside from fraudulently induced sales, MRC’s only other income was a contribution of $1,000 by one of the individual defendants, to help set up the operation. Accordingly, the court finds that the seized funds were the fruits of criminal activity. Because they are fruits of a crime committed by MRC, MRC, the judgment debtor, can have no interest in those funds. (Carr v Hoy, 2 NY2d 185; Hofferman v Simmons, 290 NY 449; New York State Tax Commn. v Ritter, 101 Misc 2d 606.) There is a strong public policy against permitting one to benefit from his own criminal activity (Carr v Hoy, supra; Hofferman v Simmons, supra.) “No one shall be permitted to * * * acquire property by his own crime” (Riggs v Palmer, 115 NY 506, 511). It makes no difference that the money was procured through telephone solicitation rather than by the use of force.
It would violate principles of justice and the public policy of the State to permit the retention of benefits illegally obtained. Therefore, the sought after funds are not property in which MRC has an interest.
The instant case differs from such cases as Clay v McCabe (56 AD2d 747) and Williamsburg Volunteer Ambulance Corps v Wendt (95 Misc 2d 414), which both arrived at an apparently different conclusion. In both of those cases, the money seized from the person of the defendant (Clay v McCabe, supra), or the premises which were raided (Williamsburg Volunteer Ambulance Corps v Wendt, supra), was neither the instrumentality or the fruit of the crime. In this case, the funds have conclusively been shown to be the fruits of the crime, that is, the criminal conduct of which MRC was convicted, was the conduct through which the funds were obtained. Boyle v Kelley (53 AD2d 457) is also not on point, since there the criminal proceeding was dismissed.
The court has also carefully considered McClendon v Rosetti (460 F2d 111) and as enforced by 369 F Supp 1391. In the instant case, however, the fact that the moneys seized were the fruits of the crime has been proven as above noted, at the criminal trial in which MRC was a defendant and took part. In such circumstances, no hearing de nova is required. (Matter of City of New York v Cosme, 67 AD2d 852.)
The next question to be considered is whether it has been shown that “the judgment debtor is entitled to the possession of such property or that the judgment creditor’s rights to the property are superior to those of the transferee [respondent].” (CPLR 5225 [b].) The first half of that question must be an *393 swered in the negative, as discussed above. This leaves the question of who, as between petitioners and respondent, has superior rights to the moneys.
It is not disputed that petitioners were defrauded of $40,504.17 and $11,596.32, respectively. Their right to return of that money must be viewed in the context of the total situation presented here. Of the total of $1,140,000 fraudulently obtained by MRC from 144 individuals, only approximately $250,000 was in the MRC bank account seized by the Attorney-General. In view of this, the court directed the Attorney-General to formulate a restitution plan for distributing the $250,000 among all the individuals defrauded. Obviously, it was not possible to fully compensate each of the individuals. To permit any one or two of those defrauded to be compensated in full would be to grant them a disproportionate share of the MRC funds. For this reason the Attorney-General was directed to retain custody of the funds pending distribution pursuant to a court-approved restitution plan. Respondent here holds the moneys for all those defrauded by MRC. Because respondent’s custody of these specifically designated funds is pursuant to court order, its right to the moneys is superior to petitioners. Although petitioners have a judgment against MRC for certain specified sums of money, respondent’s rights are superior to those of petitioners, since respondent’s retention of the moneys comes at the court’s direction.
The court’s power to direct respondent to retain the moneys pending distribution pursuant to a restitution plan can be found in the Criminal Procedure Law and Penal Law. CPL 690.55 provides: (1) that the court, upon receiving property seized pursuant to a search warrant must (a) retain custody of it; or (b) direct that it be held in the custody of the person who applied for the warrant on the condition that it be returned upon order of the court. Here, the court’s direction was pursuant to paragraph (b), and the moneys are being held by respondent pursuant to that direction. (See, People v Calciano, 66 Misc 2d 988.)
The court’s authority and power over the disposition of those moneys can also be seen in Penal Law § 60.27, entitled “Restitution and reparation”, which authorizes the court to impose restitution as part of sentence. Under subdivision (3), the provisions of CPL 420.10 (as well as CPL 420.20 and 420.30) are made applicable in the collection and remission of restitution. Under that section, the court is to designate the official other than the District Attorney to whom payment is to be remitted and may direct the manner of payment. Also bolstering the court’s authority in this area is Penal Law § 450.10 which governs the *394 disposal of stolen property. It also applies to stolen money. (See, e.g., People v Lazarus, 114 Misc 2d 785.) It authorizes the court to deliver or order the delivery of stolen property to the owner, on proof of title. It stands to reason that if the court may direct the return of stolen property to the owner, it may also direct that stolen money be fairly distributed among numerous owners, as the restitution plan is intended to do.
From the various statutory provisions discussed, it is clear that the court had the power to direct respondent to retain the seized moneys as fruits fraudulently obtained, pending a fair distribution to those defrauded. Respondent’s custody of the moneys being at the direction of the court, and such direction being a proper exercise of the court’s power and authority, respondent’s right to the sought-after moneys is superior to that of petitioners.
To the extent, if any, that the Administrative Code of the City of New York § 435-4.0 (b) (stating that money suspected of being stolen shall be given as soon as practicable to the police property clerk) might conflict with the aforementioned State provisions over the disposition of the funds, the city provision must give way to those of the State.
Because the judgment debtor has no interest in the moneys held by respondent and, in addition, respondent’s right to the moneys is superior to petitioners, the petition is dismissed. However, petitioners will be entitled, of course, to share ratably with other defrauded persons in the sums recovered from MRC and its employees.