779 F.2d 135
 UNITED STATES of America, Plaintiff,
v.
Richard BENITEZ; Kenneth Creasy; Duncan Matteson; David
Hawkins; James Irwin; John E. Austin; Thomas Gamboa;
John Bernard; Steven Brock; Marvin Trepus; Robert
Robinson; Doris Lashley; Fred Bryant; Joseph Caldrillo;
Robert Hilden; Walter Passero; Arthur Chessler; Frank
Domish; Steve Roaldson; Robert Johnson; Richard Mietzner;
Donald Voth; John Lomenzo; Thomas Anderson; Harry
Nelson; Robert Short; Marjorie Steinforth; William
Aufleger; Robert Johnson; Danny Mallicoat; Mario
Posillico; Clyde Henderson; F.C. Strange; Allen
Torgerson; Mike Carlton; Rick R. Beyers; Billy Bob
Barnett; Samuel Mevoroch; Brent L. Kidman; Charles
Piscitelli; George Martin; Charles Norris; Kenneth
Browning; Jim Renton; Joseph Bolker; Alex Mood; Marvin
Margolin; Kenneth Frank; Edwin Bakerman; James Ariyoshi;
Robert Woodward; Scott Arrigton; Art Bryden; Dominick
Mack; Meine Construction Co.; Universal Group; Founders
Equity; S.T.T., Inc.; John Eddy; Claude Ellena; Robert
Campbell; SCM Land Co.; James Hanna; Charles Engle;
David Rothberg; Ralph Wilcox; John Godfrey; Allen Morris
Co.; Robert Bjerke; Ronald Goodwyn; Jim Granger; Jack
Horton; Gary Johnston; Max Prosise; Warner Stone; James
Taylor; Richard Hadley; RailAmerica; Charles Rigby; Tak
Enomoto; Gerwin Rohrbach; Ronald Ramos; Patscheck
Development Co.; James Chenevert; Lawrence Conkerton;
M.P. Dumesnil; John Federbusch; Sandra Foutz; Thomas
Galloway; Jimmy Hayes; John Knight; E.R. Lolly; Jesse
Lonques; Sam McVea; Charles Quinn; Edmund Reggie; Emile
Reggie; Bob Rogers; William L. Steele; Innkeeper
Associates; Crossbow Ventures, Inc.; E. Dennis White;
Larry Young; Joe Zalta; Park-Redhill Co-Par; Michael
Friedman; Sid Feldman; Daniel Hammon; Gordon Mullens;
Harry Meier; Olympic-Vermont Shopping Center; Dennis
Hollyhand; John Golestani; Yardarm Restaurants; F.C.
Stangl; Jack Atkins; Mike Severson; Carl F. Guy;
Lawrence McRea; Jack J. Rand; Young D. Park; Dean
Echelbarger; Larry A. Hull; Aaron Seligson, Defendants,
Philip B. Tannenbaum; World International Limited;
International CondoResort-Pacific Ventures; Huckobey Land
Development, Inc.; Grand Wilshire Investment, Inc.; Grand
Wilshire Equity, Inc.; and 81st West River Company,
Defendants-Intervenors,
Duncan Matteson; John E. Austin; Thomas Gamboa; Robert
Robinson; Robert Hilden; Frank Domish; Robert
Johnson; Harry Nelson; Larry A. Hull
and Carl F. Guy, Defendants-Appellants,
Richard Benitez; Kenneth Creasey; David Hawkins; James
Irwin; John Bernard; Steven Brock; Marvin Trepus; Doris
Lashley; Fred Bryant; Joseph Caldrillo; Walter Passero;
Arthur Chessler; Steve Roaldson; Richard Mietzner; Donald
Voth; John Lomenzo; Thomas Anderson; Robert Short;
Marjorie Steinforth; William Aufleger; Danny Mallicoat;
Mario Posillico; Clyde Henderson; F.C. Strange; Allen
Torgerson; Mike Carlton; Rick R. Beyers; Billy Bob
Barnett; Samuel Mevoroch; Brent L. Kidman; Charles
Piscitelli; George Martin; Charles Norris; Kenneth
Browning; Jim Renton; Joseph Bolker; Alex Mood; Marvin
Margolin; Kenneth Frank; Edwin Bakerman; James Ariyoshi;
Robert Woodward; Scott Arrigton; Art Bryden; Dominick
Mack; Meine Construction Co.; Universal Group; Founders
Equity; S.T.T., Inc.; John Eddy; Claude Ellena; Robert
Campbell; SCM Land Co.; James Hanna; Charles Engle;
David Rothberg; Ralph Wilcox; John Godfrey; Allen Morris
Co.; Robert Bjerke; Ronald Goodwyn; Jim Granger; Jack
Horton; Gary Johnston; Max Prosise; Warner Stone; James
Taylor; Richard Hadley; RailAmerica; Charles Rigby; Tak
Enomoto; Gerwin Rohrbach; Ronald Ramos; Patscheck
Development Co.; James Chenevert; Lawrence Conkerton;
M.P. Dumesnil; John Federbusch; Sandra Foutz; Thomas
Galloway; Jimmy Hayes; John Knight; E.R. Lolly; Jesse
Lonques; Sam McVea; Charles Quinn; Edmund Reggie; Emile
Reggie; Bob Rogers; William L. Steele; Innkeeper
Associates; Crossbow Ventures, Inc.; E. Dennis White;
Larry Young; Joe Zalta; Park-Redhill Co-Par; Michael
Friedman; Sid Feldman; Daniel Hammon; Gordon Mullens;
Harry Meier; Olympic-Vermont Shopping Center; Dennis
Hollyhand; John Golestani; Yardarm Restaurants; F.C.
Stangl; Jack Atkins; Mike Severson; Lawrence McRea; Jack
J. Rand; Young D. Park; Dean Echelbarger; Aaron Seligson,
Defendants-Appellees,
Philip B. Tannenbaum; World International Limited;
International CondoResort-Pacific Ventures; Huckobey Land
Development, Inc.; Grand Wilshire Investment, Inc.; Grand
Wilshire Equity, Inc.; and 81st West River Company,
Defendants-Intervenors-Appellees.
 Nos. 286, 287, Dockets 85-6112, 85-6126.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 7, 1985.
Decided Dec. 13, 1985.
 
 James F. Dwyer, Syracuse, N.Y. (Lisa Gayle Bradley, Langan, Grossman, Kinney & Dwyer, Syracuse, N.Y., of counsel), for appellants Matteson, Austin, Gamboa, Robinson, Hilden, Domish, Johnson, Nelson and Hull.
 Carl F. Guy, Syracuse, N.Y., for appellant Carl F. Guy.
 David E. Peebles, Hancock & Estabrook, Syracuse, N.Y., for appellee S.T.T., Inc.
 Before FEINBERG, Chief Judge, VAN GRAAFEILAND and MESKILL, Circuit Judges.
 MESKILL, Circuit Judge.
 
 
 1
 This is an appeal from a memorandum of decision and order of the United States District Court for the Northern District of New York, McCurn, J., issued pursuant to Fed.R.Civ.P. 53(e)(2). The court adopted in part and rejected in part the report of the Special Master in an interpleader action and ordered that 53 defendants-claimants share pro rata in the property held by the United States as a disinterested stakeholder. The district court had jurisdiction in this case under 28 U.S.C. Sec. 1345 (1982). This Court has jurisdiction to consider the appeal under 28 U.S.C. Sec. 1291 (1982).
 
 
 2
 For the reasons that follow we affirm the decision of the district court.
 
 BACKGROUND
 
 3
 Donald Maloney hatched a confidence scheme. He induced parties from all over the United States to advance earnest money to him on his false promise of obtaining for them cheap loans from union pension funds. The defrauded parties lost their earnest money and did not receive the promised loans. In this manner Maloney collected approximately $2.5 million in advance fees for loans that never materialized.[1]
 
 
 4
 In December 1981, six of the defendants-claimants (diligent creditors) began actions against Maloney in the New York courts and obtained prejudgment attachments under N.Y.Civ.Prac.Law Sec. 6214(b). Neither Maloney nor his attorney released any money to the diligent creditors. On January 15, 1982, Maloney was arrested by the FBI for mail and wire fraud; the FBI seized approximately $151,000 from him that day.
 
 
 5
 On January 18, 1982, a bail application hearing (Bail Hearing) was held before a United States Magistrate. Maloney's attorney recited that he was turning over several negotiable instruments and gems to the FBI.[2] In return, the government consented to a reduction in Maloney's bail.[3] The government's attorney then stated that
 
 
 6
 the items ... are being received and accepted by us as being contraband, fruits of the crime that is involved here. Mr. Rinaldi [Maloney's attorney] and Mr. Maloney are not conceding that on this record, but they are not objecting to my identification of these items as such, and we are receiving them as fruits of the crime, and we are going to hold them in that capacity pending the resolution of all the criminal procedures.
 
 
 7
 Bail Hearing Tr. 6. The assets were to be returned to Maloney only if there were no civil orders of attachment for the property and he was acquitted.[4]
 
 
 8
 On January 28, 1982 the six diligent creditors obtained summary judgment against Maloney in state court. Executions of judgment were served the next day on Maloney, his attorney, the United States Attorney and the FBI. On February 1 the United States filed an action in the nature of interpleader under section 1345.
 
 
 9
 On February 3, 1982, three more creditors brought suit in the New York courts. On February 27, 1982, the orders of attachment of all nine diligent creditors were confirmed under New York Civil Practice Law section 6211(b). A tenth creditor, Attorney Guy, had had a judgment outstanding since 1975. All ten creditors unsuccessfully tried to levy upon the interpleader fund.
 
 
 10
 In April 1982, the district court discharged the government from liability and ordered that a Special Master be appointed. In January 1985, the Special Master submitted his report. He ruled that federal, not New York, law should apply to determine the rights of the parties. He recommended that the district court should impose a constructive trust on the proceeds of the fraud and that the approved defendants-claimants should share pro rata in the fund.
 
 
 11
 With respect to the appellants now before this Court, the Special Master determined that the nine diligent creditors' New York judgments should not be accorded full faith and credit because the state court did not have jurisdiction over the federal officials served with the execution. He thus concluded that their claims to the interpleader fund should not be accorded priority. The Special Master also concluded that Guy, the tenth diligent creditor, should not share in the fund because his judgment preceded the fraud, and because Maloney did not assert any right to the assets in the interpleader fund, assets that could otherwise be used to satisfy the judgment. In March 1985, the district court adopted all of the recommendations of the Special Master except the recommendation that federal law apply.
 
 
 12
 The nine diligent creditors claim (1) that New York courts could not impose a single constructive trust for all of the defendants-claimants in these circumstances, and (2) even if a constructive trust could be imposed, they are entitled to priority. The tenth judgment creditor claims that he should have priority over all of the claimants, arguing that they participated in the fraud. S.T.T. Inc., the only appellee who submitted a brief, claims that the district court erred in applying New York law and that the decision should be affirmed in all other respects.
 
 DISCUSSION
 
 13
 We need not reach the difficult question of whether the trial judge erred when he applied New York rather than federal law to determine the outcome of this case. The result would be the same under either law for the reasons that follow.
 
 
 14
 When the district court decided this case it did not have the benefit of the decision of the New York Supreme Court, Special Term, in Stuhler v. State of New York, 127 Misc.2d 390, 485 N.Y.S.2d 957, aff'd mem., 493 N.Y.S.2d 70 (App.Div.1985). The court there held that two judgment creditors of a corporation which had been convicted of defrauding 144 of its own customers did not have priority over the other victims of the fraud. The court did not reach the question of whether to impose a constructive trust, but it refused to accord priority to these two judgment creditors because to do so would be inequitable to the other claimants. Id. 485 N.Y.S.2d at 959-60. See also New York State Tax Commission v. Ritter, 101 Misc.2d 606, 421 N.Y.S.2d 528 (N.Y.Sup.Ct.1979). The Stuhler Court strongly implied that it would impose a pro rata distribution, saying "petitioners will be entitled, of course, to share ratably with other defrauded persons in the sums recovered." Stuhler, 485 N.Y.S.2d at 960 (emphasis added).
 
 
 15
 The Stuhler opinion stressed that the court's inherent power to order restitution was the basis for its decision. Id. 485 N.Y.S.2d at 959-60. It cited three New York statutes as evidence of this inherent power. One of the statutes gave the court the power to retain custody of property seized pursuant to a search warrant; one gave it the power to order restitution; and one gave it the power to dispose of stolen property. Id. 485 N.Y.S.2d at 959-60 (citing N.Y.Crim.Proc.Law Sec. 690.55(1)(a) and (b) (McKinney 1984) (custody of seized property); N.Y.Penal Law Sec. 60.27 (McKinney Supp.1984) (restitution orders); and N.Y.Penal Law Sec. 450.10 (McKinney 1980) (disposition of stolen property) ). The Stuhler decision thus affirms the criminal court's inherent power to fashion relief for the victims of crime. That affirmation strongly supports the result reached below.
 
 
 16
 If we were to apply federal common law to decide the action, then the pro rata distribution approved in Ruddle v. Moore, 411 F.2d 718, 719 (D.C.Cir.1969) (per curiam), and relied on by the Special Master, would justify affirming the district court. See also United States v. Central National Bank of Cleveland, 429 F.2d 5 (8th Cir.1970) (robber had no legal interest in the stolen money and thus could not share in pro rata distribution to defrauded parties); First National Bank of Cartersville v. Hill, 412 F.Supp. 422 (N.D.Ga.1976) (because constructive trust was imposed on property purchased with embezzled funds, federal tax lien could not attach to the property; United States had no priority by virtue of prior tax lien on embezzler's property); Restatement (Second) of Restitution Sec. 30(1) (Tent.Draft No. 2 1984) (Restatement ) (constructive trust is a right to restitution from property where the person holding the property owes restitution to the person claiming the property); Restatement Sec. 33(a) (tracing requirements relaxed where party holding property that would otherwise be subject to a constructive trust has prevented an exact showing of the relationship between the claim and the property); Restatement Sec. 40 (where restitution from a fund cannot be accorded to one party without infringing a similar right in another party, then fund is apportioned pro rata ). Cf. Cunningham v. Brown, 265 U.S. 1, 13, 44 S.Ct. 424, 427, 68 L.Ed. 873 (1924) (in multi-state fraud, Court classified pre-bankruptcy transfers by defrauder as unlawful preferences, stating that those who were successful "in the race of diligence" violated the spirit of the bankruptcy laws).
 
 
 17
 Due to an unfortunate scheduling error, the tenth appellant, Attorney Guy, did not have an opportunity to argue orally on this appeal. We heard only a brief summary of the facts of the case from counsel for the nine other appellants, however, and we did not hear oral argument from the appellee. We have thus treated the case as being submitted on the briefs.
 
 
 18
 Attorney Guy has no rightful claim to the interpleader fund because he obtained his judgment against Maloney long before the events pertinent to this case took place and is thus a general creditor with no prior right to the interpleader fund. American Sugar Refining Co. v. Fancher, 145 N.Y. 552, 560, 40 N.E. 206 (1895) (victim of fraud has priority over assignee for benefit of general creditors); Restatement Sec. 43, comment b ("Creditors' rights in general. In controversies over the distribution of a debtor's assets, a constructive trust or an equitable lien is prior in right to the claims of his general creditors."). Cf. Stuhler, 485 N.Y.S.2d at 959 (judgment creditor's right to defendant's assets is not superior to that of state).
 
 
 19
 Guy's claim that the defendants-claimants do not deserve relief because they have unclean hands is meritless. He asserts that the fifty-three approved claimants were "sophisticated businessmen" who "must have believed that Mr. Maloney was making the loan monies available to them through illegal means" because the loans were offered "at a rate so radically below that available anywhere else." Br. of Appellant Guy at 5. Guy never made this argument below. Even if he had so argued, there is no evidence in the record, and the trial court did not find, that the interest rates offered by Maloney were so low as to allow us to conclude that the approved claimants were willingly duped. Moreover, there was no finding that the "transaction" entered into by the fraud victims was "illegal" as Guy now argues.[5]
 
 
 20
 Guy also argues that a constructive trust could not be imposed on the interpleader fund because the assets in the fund were not traceable to the fraud. It is hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer. 5 A. Scott, Law of Trusts, Sec. 521 (3d ed. 1967). But see Rogers v. Rogers, 63 N.Y.2d 582, 587, 483 N.Y.S.2d 976, 473 N.E.2d 226 (1984) (acknowledging need to relax strict tracing requirements in some circumstances) (quoting Restatement Sec. 33(2) ). Guy's argument that tracing fails in this case is without merit because Maloney validly relinquished any personal claim that he might have to the assets that make up the interpleader fund. Contrary to Guy's assertion that "Maloney made no claim to the assets because he had been sentenced to 15 years in prison and to pay $22,000 in fines," Br. of Appellant Guy at 7, Maloney acquiesced in the release of any claim to the fund so that he could have his bail reduced. It is reasonable to infer from this acquiescence that Maloney could not prove that any part of the fund was his own property. After the surrender of the property Maloney did not even have the money to make his own bail. See note 3, supra. If Maloney had the means to prove that any of the property was rightfully his, impending impoverishment would have given him ample incentive to do so. Moreover, the property that became the interpleader fund was turned over in forms strongly suggestive of the fraud: large quantities of cash, loose diamonds and cashier's checks. It was thus reasonable for the trial court not to look behind Maloney's release of claim to the funds.
 
 
 21
 The order of the district court is affirmed. The parties shall bear their own costs.
 
 
 22
 VAN GRAAFEILAND, Circuit Judge, concurring.
 
 
 23
 As I see it, the sole issue before this Court is whether appellants are entitled to a priority in the surrendered funds by virtue of their judgment levies and attachments. In answering this question in the negative, I see no need to become involved in the vagaries of the law of constructive trusts. Because appellants' levies gave them no greater interest in the funds than Maloney had, Smith v. Amherst Acres, Inc., 42 A.D.2d 1038, 348 N.Y.S.2d 616 (mem.), modified on other grounds, 43 A.D.2d 792, 350 N.Y.S.2d 236 (1973) (mem.); Matter of Robbins, 74 Misc.2d 793, 795, 346 N.Y.S.2d 86 (1973); Eisenberg v. Mercer Hicks Corp., 199 Misc. 52, 54, 101 N.Y.S.2d 662 (1950), aff'd, 278 A.D. 806, 104 N.Y.S.2d 804 (1951), all we need decide is whether Maloney had a property interest in the money he had purloined. This issue, I am satisfied, must be determined by New York law. Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); Mitchell v. W.T. Grant Co., 416 U.S. 600, 604, 94 S.Ct. 1895, 1898, 40 L.Ed.2d 406 (1974); Aquilino v. United States, 363 U.S. 509, 513 n. 3, 80 S.Ct. 1277, 1280 n. 3, 4 L.Ed.2d 1365 (1960); Johnston v. Byrd, 354 F.2d 982, 984 (5th Cir.1965).
 
 
 24
 It is the well-established law of New York that "[n]o one shall be permitted ... to acquire property by his own crime." Carr v. Hoy, 2 N.Y.2d 185, 187, 158 N.Y.S.2d 572, 139 N.E.2d 531 (quoting Riggs v. Palmer, 115 N.Y. 506, 511, 22 N.E. 188 (1889) ), modified on other grounds, 2 N.Y.2d 882, 161 N.Y.S.2d 137, 141 N.E.2d 623 (1957); see Hofferman v. Simmons, 290 N.Y. 449, 454-58, 49 N.E.2d 523 (1943); United States v. Herzfeld, 271 F.Supp. 185, 188 (S.D.N.Y.1967); United States v. Pagan, 140 F.Supp. 711, 713 (S.D.N.Y.1955). Accordingly, because the money and jewels that Maloney surrendered were the product of his criminal activites, he had no property in which appellants could claim a priority by virtue of their collection efforts.
 
 
 
 [1]
 Order to Show Cause, Ex. H, p 10, appended to "Petition for Removal to District Court and for Consolidation with Civil Action No. 82-CV-105."
 The order to show cause and the transcript of the bail reduction hearing cited in note 2, infra, came to be part of the record in the interpleader action via a circuitous route. The transcript was included as an exhibit to the petition of the counsel for one of the nine diligent creditors. The petition requested the New York Supreme Court to issue an order to the United States Attorney to show cause why the creditor's New York Judgment should not be honored. The United States Attorney appended that order and its exhibits (including the transcript of the bail hearing) to his own petition for removal of the show cause action from New York to federal court and for consolidation of the action with the section 1345 action.
 
 
 [2]
 Order to Show Cause, Ex. D [Bail Hearing Tr.] 2. See also note 1, supra
 
 
 [3]
 Maloney pled guilty on February 5, 1982 to the felonies charged to him
 
 
 [4]
 Bail Hearing Tr. 7
 Counsel for one of the nine diligent creditors was able to swear on "information and belief" that Maloney's bail was originally set at $500,000. Petition for Order to Show Cause, p 9. Maloney turned over assets worth approximately $400,000 to the court at the hearing. Added to the $150,000 previously confiscated, these assets increased the value of the interpleader fund to approximately $600,000. Bail Hearing Tr. 4. The prosecutor originally recommended that bail be reduced to $50,000, Bail Hearing Tr. 2, but Maloney's attorney informed the court that Maloney could not get a surety bond for $50,000. Bail Hearing Tr. 4-5. The attorney represented that his client had received an offer to post a $20,000 cash bond, Bail Hearing Tr. 5, and the court acquiesced in reducing the bail bond to $20,000. Bail Hearing Tr. 7.
 
 
 [5]
 Guy's claim raises a different equitable problem than that raised by the "diligent" creditors' because he was a less than diligent creditor. He waited nearly eight years to satisfy his judgment against Maloney and now asks us to grant it in full. Br. of Appellant Guy at 10