UNITED STATES of America

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, Defendants.

No. 91–0655 (JHG).

United States District Court, District of Columbia.

Aug. 26, 1997.

Stefan D. Cassella, J. Christopher Kohn, John T. Stemplewicz, Karen I. Meyer, U.S. Dept. of Justice, for the Government.

Gregory B. Craig, Christopher W. Schmeisser, Williams & Connolly, Washington, DC, for Claimants.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, Senior District Judge.

Presently before the Court is the United States' motion to dismiss the First Round Petition of Capital Bank ("L–Claim"), which was filed pursuant to 18 U.S.C. § 1963(*l*) (1994). For the reasons stated below, the motion to dismiss will be granted and the L–Claim will be dismissed.

### Background

The facts surrounding BCCI's collapse are well known in the financial and legal communities, but certain facts bear repeating to set the stage for resolving the instant motion to dismiss Capital Bank's L–Claim.[1] In early 1991, the Bank of England received troubling information about BCCI's financial condition and integrity. In response, it commissioned a special audit, which "disclosed evidence of a complex and massive fraud at BCCI, including substantial loan and treasury account losses, misappropriation of funds, unrecorded deposits, the creation and manipulation of fictitious accounts to conceal bank losses, and concealment from regulatory authorities of BCCI's mismanagement and true financial position." Corrigan, Mattingly & Taylor, *The Federal Reserve's Views on BCCI*, 26 Int'l Law. 963, 970–71 (1992) (based on testimony before the Committee on Banking, Finance and Urban Affairs of the United States House of Representatives on September 3, 1991).

The results of the audit were shared with regulators in other countries, and, on July 5.1991, banking regulators in the United Kingdom, Luxembourg and the United States, froze assets owned or controlled by BCCI. In the United States, BCCI's assets at Capital Bank were among those seized. By July 6th, eighteen countries had shut down BCCI's operations in their jurisdictions, and, as of July 29, 1991, forty-four countries had closed down BCCI branches.

On November 15, 1991, a three-count Indictment, which included charges of conspiracy, wire fraud and racketeering against BCCI, was filed in this Court. On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants, collectively known as BCCI, and the Plea Agreement between them and the United States of America. See Transcript of Guilty Plea Proceedings at 7 (Jan. 24, 1992). In accordance with 18 U.S.C. § 1963, this Court then entered an Order of Forfeiture.

Under paragraph 9 of the Plea Agreement, BCCI forfeited all of its property interests in the United States. Pursuant to paragraph 1(e) of the Forfeiture Order, the corporate

---

1. "BCCI," as used herein, refers collectively to BCCI Holdings (Luxembourg) S.A., its two operating subsidiaries, Bank of Credit and Commerce International, S.A., and Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, an entity previously found to be the alter ego of the other BCCI entities.

defendants forfeited to the United States their ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time (excluding property brought into the United States by or on behalf of Court–Appointed Fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates). Attached to the First Order of Forfeiture, as amended, was a list of BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Included among the assets seized were four BCCI accounts at Capital Bank (Nos. 902205102, 0902205110, 085–0053580 and 902204122) with an aggregate balance of US$4,024,342 (hereinafter, the "forfeited accounts").

The Plea Agreement also established the Worldwide Victims Fund and the U.S. Fund. Under the terms of the Plea Agreement, forfeited assets were to be disbursed in equal amounts to the Worldwide Victims Fund and the U.S. Fund. *See* Plea Agreement ¶ 11 (c). The broad purpose of the Worldwide Victims Fund, operated by the Court–Appointed Fiduciaries, is to distribute funds "only to innocent depositors, creditors and other victims of BCCI whose claims are not derived directly or indirectly through violations of United States or other laws concerning narcotics, terrorism, money laundering, crimes of violence, or other acts generally recognized as felonies or similar crimes under the law of

countries subscribing to recognized norms of international justice." *Id.* ¶ 14.

The purpose of the U.S. Fund is more specific, but no less compensatory. In addition to allowing for reimbursement of the costs of investigation and prosecution of BCCI, bank insurance and other matters, the U.S. Fund is also available to provide "restitution to victims of BCCI, which may include remission to the Court Appointed Fiduciaries in accordance with 18 U.S.C. § 1963(g) for the purpose of facilitating an increase in assets available for distribution by the Court–Appointed Fiduciaries to innocent worldwide victims of BCCI, and which may include claims related to the failure of Cen-Trust, if any." *Id.* ¶ 12(f). As a result of BCCI's guilty plea and the subsequent criminal forfeiture proceedings, by July 1996 the United States had "recovered nearly $800 million, virtually all of which has been, or will be, distributed to the victims of the fraud." Testimony of Stefan Cassella before the Judiciary Committee of the House of Representatives (July 22, 1996), 1996 WL 410099, *5 (F.D.C.H.).[2]

After this Court entered the First Order of Forfeiture, which included the forfeited accounts at Capital Bank, the United States provided notice by publication and by letters to potential claimants of which it was aware. Through a timely filed L–Claim that followed, Capital Bank contends that by virtue of its right to set off and due to contingent liabilities arising from letters of credit confirmed but not paid by BCCI agencies, it is entitled to a sum that is expected to exceed US$1,139,910.80. *See* L–Claim ¶¶ 2 & 4. Additionally, the petitioner asserts a claim based on its status as a general creditor[3] and a bona fide purchaser for value.[4]

**2.** In 1995, over $225 million was disbursed to the Court Appointed Fiduciaries for the Worldwide Victims Fund. See Notice to the Court at I (filed Aug. 13, 1996). On August 1, 1996, the United States disbursed an additional $83,651,-863.24, *id.* at 2, and, on May 22, 1997, Attorney General Janet Reno "determined that the United States would transfer 100 percent of its share of the forfeited funds to the Worldwide Victims Fund so that the funds might be distributed to all BCCI victims equally on a pro rata basis." Notice to the Court at 2 (filed July 11, 1997).

**3.** "In addition, Capital Bank as a general creditor has a legitimate and significant property interest in any other assets that have been released to the Asset Forfeiture Office, Department of Justice, pursuant to the Court's January 31 forfeiture order." L–Claim ¶ 1.

**4.** "Pursuant to 18 U.S.C. § 1963(*l*)(6)(B), the petitioner Capital Bank is a 'bona fide purchaser for value of the right, title and interest in' the above-described property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture." L–Claim 53.

The United States later filed the instant motion to dismiss on the grounds of ripeness, lack of standing and failure to state a claim upon which relief can be granted. As to the claim based upon contingent liabilities with BCCI, the government argues that Capital Bank's petition is unripe. Additionally, the government contends that Capital Bank, as a general creditor, lacks standing. On the merits, the government states that the petitioner has failed to state a claim upon which relief can be granted because it lacks a legal interest in a specific asset as required by 18 U.S.C. § 1963(*l*)(6)(A), and it is not a bona fide purchaser for value under 18 U.S.C. § 1963(*l*)(6)(B).

### *Discussion*

BCCI's assets were forfeited pursuant to 18 U.S.C. § 1963,[5] which sets forth an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims. It permits any person, other than the defendant, claiming a legal interest in forfeited property to petition the Court for a hearing to adjudicate the validity of that interest. 18 U.S.C. § 1963(*l*)(2).[6] Section 1963(*l*)(6) sets forth the substantive elements that a third party must establish to obtain amendment of an order of forfeiture:

If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such

right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination. 18 U.S.C. § 1963(*l*)(6).

A petitioner must first establish standing. Only by establishing standing and alleging the requisite elements of either § 1963(*l*)(6)(A) or § 1963(*l*)(6)(B) may a party obtain judicial relief from an order of forfeiture. *See United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of Pacific Bank)*, 956 F.Supp. 5, 10 (D.D.C.1997); *United States v. BCCI Holdings (Luxembourg), S.A., et al. (In re Petition of BCCI(O) Foreign Branches)*, 833 F.Supp. 32, 36 (D.D.C.1993); *aff'd*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States*, 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *United States v. BCCI Holdings (Luxembourg), SA., et al. (In re Petition of Chawla)*, 833 F.Supp. 9, 13 (D.D.C.1993), *aff'd*, 46 F.3d 1185, 1188

**5.** 18 U.S.C. § 1963(a) provides, in relevant part.

> Whoever violates any provision of section 1962 of this chapter shall ... forfeit to the United States, irrespective of any provision of State law—
> (1) any interest the person has acquired or maintained in violation of section 1962;
> (2) any—
> (A) interest in;
> (B) security of;
> (C) claim against; or
> (D) property or contractual right of any kind affording a source of influence over;
> any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and
> (3) any property constituting, or derived from, any proceeds which the person has

> obtained directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.
> The court, in imposing sentence on such person shall order ... that the person forfeit to the United States all property described in this subsection.

**6.** This provision provides:

> Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

(D.C.Cir.), *cert. denied sub nom. Chawla v. United States,* 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *see also United States v. Schwimmer,* 968 F.2d 1570, 1584 (2nd Cir.1992); *United States v. Lavin,* 942 F.2d 177, 187 (3rd Cir.1991). If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the Court may dismiss the petition without providing a hearing. *See In re Petition of Pacific Bank,* 956 F.Supp. at 10; *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983); *United States v. Campos,* 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean,* 649 F.Supp. 820, 825 (D.Nev.1986), *affd. without opinion,* 822 F.2d 62 (9th Cir.1987).

■ In resolving a motion to dismiss, the Court assumes true, as she must, the facts alleged by the petitioner. A motion to dismiss under Fed.R.Civ.P. 12(b)(6) may be granted if it appears that the petitioner can prove no facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Kenneda v. United States,* 880 F.2d 1439, 1442 (D.C.Cir. 1989). The Court must construe the complaint liberally, granting a petitioner the benefit of any reasonable inferences that can be derived from the facts alleged. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Kowal v. MCI Communications,* 16 F.3d 1271, 1275 (D.C.Cir.1994).

■ Section 1963(*l*)(2) requires a party to assert "a legal interest in property forfeited to the United States" to have standing. This requirement is imposed to further the purpose of an L–Claim proceeding, which, while ancillary to the underlying criminal case, is intended to ensure that property forfeited to the United States was that of the defendant; it does not attempt to divide the defendant's estate among competing claimants. *See United States v. BCCI Holdings (Luxembourg), S.A. (In re Petition of General Creditors),* 814 F.Supp. 106, 110 (D.D.C.1993). This latter task is properly performed at a liquidation proceeding, where all parties without a "legal interest" in forfeited property can recover on a *pro rata* basis with the many other claimants to the debtor's estate. *Id.* at 111; *see Downriver Community Fed. Credit Union v. Penn Square Bank,* 879 F.2d 754 (10th Cir.1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); *First Empire Bank–New York v. F.D.I.C.,* 572 F.2d 1361 (9th Cir.1978), *cert. denied,* 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).

■ The critical inquiry in an L-proceeding is, therefore, ownership of the disputed funds. As recognized by this Court and most, if not all, other courts addressing the issue, an unsecured creditor does not possess an interest in any specific asset of a debtor and merely has a general interest in the debtor's entire estate. *See In re Petition of Chawla,* 46 F.3d at 1191, *In re Petition of Pacific Bank,* 956 F.Supp. at 10; *see also Schwimmer,* 968 F.2d at 1581; *Campos,* 859 F.2d at 1240; *United States v. Reckmeyer,* 836 F.2d 200, 206 & n. 3 (4th Cir.1987); *Mageean,* 649 F.Supp. at 828. Because a general creditor is unable to assert an interest in a specific asset, it cannot assert a legal right, title, or interest "in property which has been ordered forfeited" as required by § 1963(*l*)(2), at least in situations where, like here, a defendant's entire estate is not subject to forfeiture. *In re Petition of Chawla,* 46 F.3d at 1191; *see Reckmeyer,* 836 F.2d at 206 n. 3 ("It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest... forfeitures."). Accordingly, absent a showing of an interest in a specific asset, Capital Bank would lack standing to assert a claim in these L-proceedings.

■ Examined in this light, the L–Claim must be dismissed. Because the Court has previously rejected each of the arguments upon which Capital Bank relies, little discussion is warranted. While the right of set off is an important one under state law, where it is not timely executed, as here, it remains inchoate and insufficient to establish standing. *United States v. BCCI*

*Holdings, Inc., et al. (In re Petition of American Express Bank* (standing)), 941 F.Supp. 180, 186 (D.D.C.1996). Even where the right of set off has been timely executed, such execution, by itself, does not establish a vested or superior right, title or interest pursuant to 18 U.S.C. § 1963(*l*)(6)(A). *United States v. BCCI Holdings, Inc., et al. (In re Petition of American Express Bank* (merits)), 961 F.Supp. 287, 294–95 (D.D.C.1997), *appeal noted,* BCCI Docket No. 1873 (May 1, 1997). As to Capital Bank's contingent liabilities arising from its business dealings with BCCI, such liabilities make the petitioner little more than a general creditor. *In re Petition of Security Pacific Int'l Bank,* slip. op. at 9 (D.D.C., Jan. 17, 1997). It is the law of this circuit that general creditors lack standing to assert claims under 18 U.S.C. § 1963(*l*), *In re Petition of Chawla,* 46 F.3d 1185, 1191 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States,* 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995), and such an inability to assert a legal interest in a specific asset would undermine the petitioner's claim on the merits. *See, e.g., In re Petition of General Creditors,* 814 F.Supp. at 110–11. Finally, Capital Bank's claim under § 1963(*l*)(6)(B) is fatally defective simply because there has been no purchase of tangible property. *In re Petition of American Express Bank,* 961 F.Supp. at 295 (D.D.C.1997); *In re Petition of Pacific Bank,* 956 F.Supp. at 13–14; *United States v. BCCI Holdings Inc., (In re Petitions of Trade Creditors),* 833 F.Supp. 22, 28 (D.D.C.1993), *aff'd,* 48 F.3d 551 (D.C.Cir.), *cert. denied sub norm. Liquidation Comm'n for BCCI (Overseas) Ltd., Macau v. United States,* —— U.S. ——, 116 S.Ct. 563, 133 L.Ed.2d 489 (1995).

Capital Bank suggests that granting the United States' motion and dismissing its petition will give the government "a windfall recovery at the expense of an innocent third party." Mem. in Opp. at 2. However, criminal forfeiture is not a tool for the government to injure the innocent, and it has not been used as such in this case. When persons and entities do business with criminal enterprises, such as BCCI, it is an unfortunate fact of life that economic injury may result. The innocent persons and business entities, such as the thousands of BCCI depositors world-wide and banks (both domestic and foreign) who did business with BCC1, may be unable to recover their losses fully. Contrary to the implication in the petitioner's memorandum, the government is not the source of any "innocent" third party's problems-BCCI, whom the petitioner willingly engaged as a financial partner, is. Moreover, RICO expressly provides mechanisms for relief, if appropriate. The RICO third-party hearing process is one such mechanism, *see* 18 U.S.C. § 1963(*l*), and a petition for remission and mitigation submitted to the Attorney General is yet another. *See id.* § 1963(g). In the context of the seizure of BCCI's assets, those third parties who do not meet the statutory criteria of 18 U.S.C. § 1963(*l*)(6) or who fail to persuade the Attorney General that remission or mitigation is appropriate under Section 1963(g) are free to petition the Worldwide Victims Fund. Significantly, and further undercutting the suggestion that the United States has been unjustly enriched, Attorney General Reno recently determined that 100 percent of the assets forfeited to the United States would be transferred to the Worldwide Victims Fund. *See supra* note 2.

Accordingly, the government's motion will be granted and the L–Claim will be dismissed.

### CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the United States' motion to dismiss is granted and Capital Bank's L–Claim is dismissed.

IT IS SO ORDERED.