**UNITED STATES of America**

**v.**

**BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, International Credit and Investment Company (Overseas) Limited, Defendants.**

**Cr. No. 91–0655 (JHG).**

United States District Court, District of Columbia.

Aug. 19, 1993.

Stefan D. Cassella, Richard W. Sponseller, Laurie J. Sartorio, U.S. Dept. of Justice, Wash., DC, for Government.

William S. Lerach, Dennis Stewart, Milberg Weiss Bershad Specthrie & Lerach, San Diego, CA, Kevin P. Roddy, Milberg Weiss Bershad Spechtrie & Lerach, Los Angeles, CA, for defendants.

### ORDER DISMISSING THE MARCH 11, 1992 AND SEPTEMBER 11, 1992 PETITIONS OF SHRICHAND CHAWLA, LEO D. CURRAN, WILLY HERMANS AND RED CIRCLE INVESTMENT, LTD., JALEH KHORASSANCHY, AMIT PANDYA, SOHA, INC., IDRISS DEVCO, INC. AND S & L GENTRADE, INC.

JOYCE HENS GREEN, District Judge.

Presently pending are the United States' motions to dismiss the petitions for hearings to adjudicate interests in forfeited property filed by **Shrichand Chawla, Leo D. Curran, Willy Hermans and Red Circle Investment, Ltd., Jaleh Khorassanchy, Amit Pandya, Soha, Inc., Idriss Devco, Inc., and S & L Gentrade, Inc.** (the "petitioners" or "claimants"). Upon consideration of the motions to dismiss, all filings relating thereto, and oral argument presented at the May 14, 1993 hearing, the motions are granted and the petitions are dismissed.

### BACKGROUND

On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants (collectively "BCCI") and the plea agreement between them and the United States of America. Thereupon, and in accordance with 18 U.S.C. § 1963, an Order of Forfeiture was entered. Paragraph 1(e) of the Order provides that the corporate defendants named in this action shall forfeit to the United States ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time, but not property that may be brought into the United States by or on behalf of court-appointed fiduciaries of BCCI

in the course of the management or disbursement of the liquidation estates as described in the plea agreement. Attached to the January 24, 1992 Order as Exhibit A was a list of specific BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a supplemental Order on January 31, 1992 which directed immediate seizure of the specific assets listed therein.

In satisfaction of 18 U.S.C. § 1963(*l*)(1), and to inform third parties of potential rights to seek recovery of assets declared forfeited, the United States published notice of the Order of Forfeiture, as amended, during the period between February 13, 1992 and March 27, 1992 in eleven major United States newspapers including the *Wall Street Journal*, the *New York Times*, the *Chicago Tribune*, and the *Los Angeles Daily Journal*. *See* Government's Compliance with Order of May 8, 1992, filed May 12, 1992. In addition, personal notice was sent to over 340 persons and entities as late as April 3, 1992. *Id.*

The claimants filed their first petition to amend the Order of Forfeiture on March 11, 1992. In that three page submission, they claimed to represent a class of over one million BCCI depositors in an action styled *Hamid v. Price Waterhouse & Co.*, Case No. CV-89-6538, which was then pending in the United States District Court for the Central District of California. Third Party Petition for Hearing to Adjudicate Property Interest (18 U.S.C. § 1963) ("Petition") at 1. The third amended complaint filed in the California case alleged that the plaintiffs lost billions of dollars due to racketeering and fraud committed by the 76 named defendants, in-

cluding Price Waterhouse, Ernst & Young, Abu Dhabi, Clark Clifford, Robert Altman, and Manuel Noriega. To describe the interests which the claimants seek to recover in this case, the petition incorporated by reference the *Hamid* complaint and merely stated:

> The nature and extent of Petitioner's right, title, or interest in the subject property, which are superior to BCCI's claims at the time of the commission of the acts which gave rise to the guilty plea and forfeiture under 18 U.S.C. § 1963(1), the time and circumstances of Petitioner's acquisition of the right, title, or interest in the property, additional facts supporting the claims and the relief sought are alleged in detail in the attached Third Amended Complaint.

Petition at 2. Unfortunately, the third amended complaint, which exceeds 475 pages[1], sheds little light on the nature and extent of the legal interest asserted, especially since the defendants in this case were not parties to the *Hamid* litigation.

Because the California complaint was based on charges of racketeering and fraud, the government characterized the petitioners as tort claimants and addressed their claim in its Motion to Dismiss Petitions of BCCI Tort Petitioners, which also addressed claims filed by Banco Central de Reserva del Peru ("Peru"),[2] the Republic of Panama, and Lee Scarfone, Patricia Scarfone, ALSA International, Inc., and Banditball, Inc. ("the Scarfones").[3] The court-appointed fiduciaries for the four corporate defendants subsequently filed a memorandum of law addressing the same claims. The petitioners filed an opposition to the government's motion in which they argued that they should be considered depositors, rather than tort claimants, who were fraudulently induced to place money with BCCI. More specifically, the petition-

---

1. The petitioners represented that exhibits exceeding 2000 pages were attached to the complaint filed in the California action, Petition at 2–3, but those exhibits were not submitted to this Court.

2. The Court dismissed Peru's petitions on February 22, 1993, holding that tort claimants could not be considered "bona fide purchasers for value" under 18 U.S.C. § 1963(*l*)(6)(B). *United*

*States v. BCCI Holdings (Luxembourg), S.A.,* 814 F.Supp. 111 (D.D.C.1993).

3. The Court dismissed the Scarfones' petition on February 23, 1993, holding that as unsecured creditors, they could not assert the requisite interest in forfeited property. *United States v. BCCI Holdings (Luxembourg), S.A.,* 1993 WL 170640 (D.D.C.1993).

ers contended that because BCCI solicited deposits to be used for undisclosed legal purposes, the debtor/creditor contracts they entered were illegal and *void ab initio*. The depositors claimed that since they never passed title to their deposited funds to BCCI, those funds could not lawfully be forfeited to the United States. Memorandum on Behalf of Class Depositor/Petitioners' in Opposition to the Government's Motion to Dismiss Third Party Petitions for Hearing to Adjudicate Property Interest, filed June 22, 1992, at 12. The government filed a reply to the opposition, noting that the opposition constituted a "last minute attempt to rewrite their L-claims," Government's Reply to Oppositions to Motion to Dismiss Petitions of BCCI Tort Petitioners at 24, and citing reasons why the petitioners' new theory should be rejected.

On June 24, 1992, the government filed a Motion to Amend Order of Forfeiture to Include Additional Property, seeking forfeiture and seizure of assets in newly discovered bank accounts held in the names of the corporate defendants, proceeds from the sale of a condominium purchased with resources provided by a corporate defendant, money remaining in a "BCCI Legal Fund" established by one of the corporate defendants for the defense of its employees' legal interests, a bankruptcy distribution to one of the corporate defendants, and assets held at various New York financial institutions in the name of ICIC Investments Ltd., a sibling corporation of defendant ICIC (Overseas) Ltd. The Court granted the government's motion and issued an Order of Forfeiture on July 29, 1992. The United States subsequently provided notice of the Order to potential claimants.[4]

The claimants filed their second petition on September 11, 1992, which was identical to the first except that it sought to recover funds forfeited in July 1992. The government filed a motion to dismiss the petitioners' "Round Two" claim, which also addressed second petitions filed by Peru and the Scarfones. The petitioners filed an opposition and the government submitted a reply. Oral argument on both motions was heard on May 14, 1993.

**4.** Over 100 petitions to amend the two Orders of

## DISCUSSION

As an initial matter, the Court has serious doubts about the claimants' standing to file a petition on behalf of the more than one million BCCI depositors worldwide. Although the *Hamid* case was filed as a class action, no class was ever certified and the case has been dismissed by the District Court. In addition, no motion for class certification has been filed with this Court. Nonetheless, in light of the legal conclusions made below relating to the merits of the claims and because the time which putative class members could file individual petitions to amend the January 24, 1992 and July 29, 1992 Orders of Forfeiture has expired, the petitions will be treated, for purposes of resolving the government's motions to dismiss, as having been filed by a class of worldwide depositors.

Title 18, United States Code, § 1963 sets forth an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims. The provision granting standing to parties seeking to amend an order of forfeiture to exclude certain property states:

> Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice ..., whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property.

18 U.S.C. § 1963(*l*)(2). Section 1963(*l*)(6) sets forth the substantive elements which a third party must establish to successfully obtain amendment of an order of forfeiture and provides in full:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because

Forfeiture have been filed as of this date.

the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.[5]

Only by establishing standing and satisfaction of all requisite elements of either § 1963(*l*)(6)(A) or (B) may a party obtain judicial relief from an order of forfeiture. *See United States v. Schwimmer,* 968 F.2d 1570, 1584 (2d Cir.1992) ("The *only* role of the District Court is to amend the order of forfeiture where a genuine property interest of the sort specified in § 1963(*l*)(6) is demonstrated.") (emphasis in the original); *United States v. Lavin,* 942 F.2d 177, 187 (3d Cir. 1991) ("Those third parties who fall outside of the [limited avenues of relief], regardless of how sympathetic they are, must petition the Attorney General for relief.") If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See United States v. Campos,* 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean,* 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion,* 822 F.2d 62 (9th Cir. 1987); S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3374, 3391.

The litigation tactics of the petitioners and their chameleon-like characterizations of their claims have greatly frustrated the Court's attempts to understand the nature of the legal right, title, or interest in property which they seek to recover. The petitions' incorporation by reference of the third amended complaint in the *Hamid* case led the government, the court-appointed fiduciaries, and the Court to believe that the interests asserted arose out of alleged torts committed by BCCI or its agents. The petitioners' opposition to the government's motion to dismiss the first petition, however, indicates that the asserted interest is based on a theory that the petitioners were special depositors who never transferred title to their deposits to BCCI. Under that theory, it appeared that the petitioners claimed to be secured creditors of BCCI with ownership interests in traceable assets. When asked at the hearing, "What's the exact nature of the interest you are seeking in this case, the one before this Court? ... [A]re you claiming the interest arising as depositors, as tort interests, contractual? What?," Transcript of May 14, 1993 Motion Hearing ("Tr.") at 16, counsel for the petitioners provided yet another characterization by responding, "We are general creditors. We acknowledge that. We do not call ourselves tort claimants. We are like the way the Court characterized the Scarfones' claims." Tr. at 17–18. Notwithstanding that clear representation, counsel asserted only minutes later that the petitioners' interest arose from a constructive trust similar to the one imposed in *United States v. Schwimmer,* Tr. at 19. This theory was never raised by the Scarfones. When asked whether the claimants asserted interests arising out of a constructive trust in their petitions or in any other filings, counsel conceded, "No, because Your Honor, I was not aware of the point. I learned of it from reading the Bank of Japan's brief. I will say that in all candor." Tr. at 27. Though the Court has considered treating the terse petitions as if they asserted interests arising from tortious conduct and dismissing them summarily for the reasons supporting the dismissal of the petitions filed by Peru, *United States v. BCCI Holdings (Luxembourg), S.A.,* 814 F.Supp. 111 (D.D.C.1993), it will provide the claimants a generous benefit of the doubt and treat their petitions as if they

---

**5.** Title 18 U.S.C. § 1963(*l*)(6) contains exactly the same language as 21 U.S.C. § 853(n)(6), the statute providing for forfeiture in criminal narcotics cases, and it appears that no court has interpreted these two provisions differently. Be-

cause the two subsections are identical and because of the relative dearth of caselaw interpreting and applying § 1963(*l*), the Court's opinion relies on reasoning contained in § 853(n) cases as well as in § 1963(*l*) cases.

alleged interests arising both from constructive trusts and from general debtor/creditor relationships.

## A. STANDING ISSUES ARISING UNDER 18 U.S.C. § 1963(*l*)(2)

■ Because 18 U.S.C. § 1963(*l*)(2) provides standing only to third parties asserting "*legal* interest[s] in property which has been ordered forfeited to the United States" (emphasis added), and because 18 U.S.C. § 1963(g) allows the Attorney General to restore forfeited property to victims when "in the interest of justice" and "not inconsistent" with other provisions of RICO, it might appear to some that constructive trusts, which are equitable remedies, cannot afford standing to third parties seeking to recover forfeited assets pursuant to § 1963(*l*). As the Second Circuit has recognized, however, the term "legal" is ambiguous and "may be interpreted to mean 'traditionally enforceable at law,' as opposed to 'traditionally enforceable at equity,' or it may mean, 'according to the law' as opposed to 'according to what is considered just and equitable.'" *Schwimmer*, 968 F.2d at 1582. While the Court concedes that the latter interpretation may not be as "obviously" correct as the Third Circuit found it to be, *Lavin*, 942 F.2d at 185 n. 10, it is nonetheless is persuaded by *Schwimmer* and the cases cited therein that "the term 'legal' in § 1963(*l*) should be interpreted to mean 'under the law,'" and that beneficiaries of constructive trusts can therefore have standing to seek judicial relief from an order of forfeiture. *Schwimmer*, 968 F.2d at 1582.

■ Notwithstanding the above conclusion relating to general notions of standing, it is inappropriate to impose a constructive trust in favor of the specific petitioners presently before the Court. As the record of this case clearly shows, one of the most significant motivating factors behind the Court's approval of the plea agreement between the United States and BCCI was the fact that the agreement provided for the creation of a worldwide victims fund so that "innocent victims of BCCI's wrongdoing can recover at least a portion of lost assets in as fair a manner as possible—equitable, orderly, and expeditious." Transcript of Plea Acceptance and Sentence, January 24, 1992, at 6. The Court expressly recognized, "Because the fund will be administered on a global scale through unified proceedings, piecemeal and unfair distribution can be avoided." *Id.* Assuming as true the petitioners' allegation that all deposits made by the purported class of claimants were fraudulently induced, there can be no doubt that imposition by this Court of a constructive trust on those deposits would cause gargantuan disruption of the global liquidation proceedings currently underway. Besides the practical consideration of this Court's inability to adjudicate whether each of the approximately one million depositors can establish that they made deposits and that such deposits were forfeited by this Court, imposing a trust would significantly harm the abilities of other BCCI creditors to recover fair portions of lost funds. Therefore, in accordance with the rationales of *Sisters of the Presentation of the Blessed Virgin Mary of Aberdeen, South Dakota v. Nat'l Credit Union*, 961 F.2d 733 (8th Cir. 1992); *Downriver Community Fed. Credit Union v. Penn Square Bank*, 879 F.2d 754 (10th Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); and *Bruneau v. Fed. Deposit Ins. Corp.*, 785 F.Supp. 585 (E.D.La.), *aff'd*, 981 F.2d 175 (5th Cir.1992), a constructive trust in favor of the petitioners will not be imposed.

■ Given that no constructive trust is recognized, petitioners are considered, in accordance with their own prior description, to be "like the way the Court characterized the Scarfones' claims," Tr. at 18—that is, simply as general creditors of BCCI. Unlike the beneficiary of a constructive trust, an unsecured or general creditor does not possess an interest in any specific asset of a debtor and merely has a general interest in the debtor's entire estate. *See* February 23, 1993 Order Dismissing the March 18, 1992 and September 4, 1992 Petitions of Lee Scarfone, Patricia Scarfone, ALSA International, Inc. and Banditball, Inc., *United States v. BCCI Holdings (Luxembourg), S.A.*, —— F.Supp. —— (D.D.C.1993); *Schwimmer*, 968 F.2d at 1581 ("A general creditor has no interest in a particular asset or particular funds that is

either vested or superior to a defendant's. He may have a right to receive payment, but he does not have a property interest superior to defendant's in any particular asset or funds...."); *Campos*, 859 F.2d at 1240 (unsecured creditors who filed third-party claims "failed to allege or make a prima facie showing of any legal right, title, or interest *in the forfeited property* ") (emphasis added); *United States v. Reckmeyer*, 836 F.2d 200, 206 & n. 3 (4th Cir.1987) ("Unlike secured creditors, general creditors cannot point to any one specific asset and claim that they are entitled to payment of the value of that specific asset. General creditors instead enjoy a legal interest in the entire estate of the debtor."); *Mageean*, 649 F.Supp. at 828 ("The Court ... concedes the [unsecured] creditors do not, in a technical sense, have legal interests in the forfeited property."). Because general creditors are unable to assert interests in specific assets, they cannot assert legal rights, titles, or interests "in property which has been ordered forfeited" as required by § 1963(*l* )(2), at least in situations where a defendant's entire estate is not subject to forfeiture. *See Reckmeyer* at 206 n. 3 ("It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest civil forfeitures."). Accordingly, given that the Court's Orders of Forfeiture reach only property located in the United States and not the entire estates of the four corporate defendants, the claimants do not have standing to seek amendment of the Court's Orders of Forfeiture and their petitions must be dismissed.

## B. ISSUES RELATING TO THE SUBSTANTIVE REQUIREMENTS OF 18 U.S.C. § 1963(*l* )(6)(A) AND (B)

██ Even were the claimants found to have standing under § 1963(*l* )(2), they could not, as general unsecured creditors, be considered to have the "vested" or "superior" rights, titles, or interests in forfeited property which are required by § 1963(*l* )(6)(A). As recognized by the Second Circuit, "the

categories of *vested* and *superior* are intended to cover those cases where the Court lacks jurisdiction over the property because it is not really 'property of the defendant.' " *Schwimmer*, 968 F.2d at 1581 (emphasis in the original). Because unsecured creditors lack property interests superior to a defendant's in particular assets or funds, their asserted interests do not "undermine the court's jurisdiction over the property, and [do] not invalidate the order of forfeiture. Thus, a general creditor has no interest in particular assets or funds that warrants an amendment of an order of forfeiture under § 1963(*l* )(6)(A)." *Id.*[6]

██ In addition to failing to meet all requirements of § 1963(*l* )(6)(A), the claimants are unable to satisfy all prerequisites of the only other basis for court-ordered relief, § 1963(*l* )(6)(B). When defining the third parties who could recover under subsection (B), Congress used the phrase "bona fide purchaser for value," a legal term of art referring to certain buyers of tangible property. *See Lavin*, 942 F.2d at 185; *Campos*, 859 F.2d at 1238; *Mageean*, 649 F.Supp. at 829. Though some courts applying § 1963(*l* )(6)(B) or its equivalent in the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 853(n)(6)(B), have interpreted the phrase to include any person engaging in an arms' length business transaction, *see, e.g., Reckmeyer*, 836 F.2d at 208; *Mageean*, 649 F.Supp. at 829, such a broad interpretation of the phrase is inappropriate. As Justice O'Connor has noted, "a judge must presume that Congress chose its words with as much care as the judge [herself] brings to bear on the task of statutory interpretation," *FBI v. Abramson*, 456 U.S. 615, 635, 102 S.Ct. 2054, 2066, 72 L.Ed.2d 376 (1982) (dissenting opinion), and the literal language of a statute should be conclusive in the absence of a clearly expressed legislative intent to the contrary. *See Russello v. United States*, 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983). *See also Evans v. United States*, —— U.S. ——, ——, 112 S.Ct. 1881, 1885, 119 L.Ed.2d 57 (1992) ("It is a

---

**6.** Had a constructive trust been imposed in favor of the petitioners, it appears that they might be able to recover under § 1963(*l* )(6)(A), but only if they could trace their interests to specific funds before the Court. *See Schwimmer*, 968 F.2d at 1583.

familiar 'maxim that a statutory term is generally presumed to have its common-law meaning.'") (quoting *Taylor v. United States*, 495 U.S. 575, 592, 110 S.Ct. 2143, 2155, 109 L.Ed.2d 607 (1990)). Congress could easily have adopted language in § 1963(*l* )(6)(B) expressly providing protection to all parties engaged in arms' length transactions with defendants, and its failure to do so is strong evidence of a desire not to provide such a wide avenue of relief. The Senate Judiciary Committee's report on the statute does not provide persuasive evidence of a clear intent to the contrary. It is true that the report recognized that the purpose of the relation back doctrine codified at § 1963(c) was to "close a potential loophole in current law whereby the criminal forfeiture sanction could be avoided by transfers that were not *'arms' length.'*" S.Rep. No. 225, 98th Cong., 2d Sess. 200–01, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3383–3384 ("S.Rep.") (emphasis added). However, when the report addressed the nature of the relief available to third parties under § 1963(*l* )(6), the provision at issue here, it used narrower language and spoke only of vested or superior interest holders and "bona fide *purchasers* for value." S.Rep. at 209, 1984 U.S.Code Cong. & Admin.News at 3392 (emphasis added). Accordingly, in light of the clear statutory language and the absence of an unambiguously expressed contrary intent of Congress, the phrase "bona fide purchaser for value" is interpreted to refer only to a certain class of buyers of tangible property. Because the claimants did not obtain their alleged interests through the purchase of tangible property, they would not be entitled to relief under § 1963(*l* )(6)(B) even were they found to have standing under § 1963(*l* )(2).[7]

7. This Court's Order Dismissing the April 24, 1992 and September 2, 1992 Petitions of Banco Central de Reserva del Peru, 814 F.Supp. 111 (D.D.C.1993), does not conflict with the above analysis. Because Banco Central de Reserva del Peru, as a tort claimant, could not be considered to have obtained its asserted interest even through an arms' length transaction, it was unnecessary to further define the scope of "bona fide purchaser for value" in that opinion.

8. Paragraph 7 provides in full:

## C. THE PETITIONERS' REQUEST FOR A STAY

At the close of the hearing on the government's motions to dismiss, the petitioners asked for a stay prohibiting the disbursement of forfeited funds in the event the motions are granted. In a written filing submitted after the hearing and in accordance with a briefing schedule set by the Court, the government opposed the request, primarily on the grounds that a stay is premature and unnecessary since no forfeited assets may be disbursed until the Court approves a formal motion for disbursement and until claims to forfeited assets have been "resolved." *See* Paragraph 7 of January 24, 1993 Order of Forfeiture.[8] The court-appointed fiduciaries for the corporate defendants agree that the denial of a stay would not result in any immediate disbursement of funds. In light of the procedures set forth in Paragraph 7 and the government's concession that third-party petitioners may submit oppositions to disbursement motions based, *inter alia,* on the pendency of an appeal, *see* Government's Brief Relating to Stay Pending Appeal of order Dismissing L–Claim, filed June 2, 1993, at 3–5, the claimants' request for a stay is denied without prejudice. The petitioners' request for a stay may be renewed in the form of an opposition to a motion for disbursement.

## CONCLUSION

For the reasons stated above, it is hereby

ORDERED that the March 11, 1992 and September 11, 1992 petitions filed by **Shrichand Chawla, Leo D. Curran, Willy Hermans and Red Circle Investment, Ltd., Jaleh Khorassanchy, Amit Pandya, Soha,**

Pursuant to the ancillary hearing procedures set forth in Title 18, United States Code, Section 1963(*l* ), no disbursements shall be made from the Account without further Order of this Court. Should it appear that no claim has been made with respect to particular assets transferred to the Account pursuant to Section 1963(*l* ), or at such time as such claims to such assets have been resolved, the Court will entertain motions from the government for the disbursement of funds.

Inc., **Idriss Devco, Inc., and S & L Gentrade, Inc.** are dismissed. It is

FURTHER ORDERED that the petitioners' request for a stay pending appeal is denied without prejudice to renew in the form of an opposition to a motion for disbursement filed by the government. The government shall serve a copy of its motion for disbursement on counsel for the petitioners when such a motion is filed.