UNITED STATES of America

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited and International Credit and Investment Company (Overseas) Limited, Defendants.

Crim. Action No. 91–0655 (JHG).

United States District Court, District of Columbia.

Aug. 26, 1997.

U.S. Dept. of Justice, Stefan D. Cassella, Washington, DC, for U.S.

Eric L. Lewis, A. Katherine Toomey, Baach, Robinson & Lewis, Washington, DC, Michael Nussbaum, Ropes & Gray, Washington, DC, for the Court–Appointed Fiduciaries.

Timothy M. Broas, Winston & Strawn, Washington, DC, for Claimants.

### *In re* **Fifth Round Petition of the BCCI Campaign Committee**
### *MEMORANDUM OPINION AND ORDER*

JOYCE HENS GREEN, District Judge.

Presently before the Court is the Joint Motion of the United States and the Court–Appointed Fiduciaries to Dismiss, or in the Alternative, for Summary Judgment on the Claim by the BCCI Campaign Committee, which was filed pursuant to 18 U.S.C. § 1963(*l* )("L–Claim"). For the reasons stated below, the motion to dismiss will be granted.

### Background

The facts surrounding BCCI's collapse are well known in the financial and legal communities, but certain facts bear repeating to set the stage for resolving the instant motion to dismiss this L–Claim.[1] In early 1991, the Bank of England received troubling information about BCCI's financial condition and integrity. In response, it commissioned a special audit, which "disclosed evidence of a complex and massive fraud at BCCI, including substantial loan and treasury account losses, misappropriation of funds, unrecorded deposits, the creation and manipulation of fictitious accounts to conceal bank losses, and concealment from regulatory authorities of BCCI's mismanagement and true financial position." Corrigan, Mattingly & Taylor, *The Federal Reserve's Views on BCCI*, 26 Int'l Law. 963, 970–71 (1992) (based on testimony before the Committee on Banking, Finance and Urban Affairs of the United States House of Representatives on September 3, 1991).

The results of the audit were shared with regulators in other countries, and, on July 5, 1991, banking regulators in the United Kingdom, Luxembourg and the United States, froze assets owned or controlled by BCCI. In New York, the Superintendent of Banks seized BCCI's assets at various New York banks. By July 6th, eighteen countries had shut down BCCI's operations in their jurisdictions, and, as of July 29, 1991, forty-four countries had closed down BCCI branches.

On November 15, 1991, a three-count Indictment, which included charges of conspiracy, wire fraud and racketeering against BCCI, was filed in this Court. On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants, collectively known as BCCI, and the Plea Agreement between them and the United States of America. *See* Transcript of Guilty Plea Proceedings at 7 (Jan. 24, 1992). In accordance with 18 U.S.C. § 1963, this Court then entered an Order of Forfeiture.

Under paragraph 9 of the Plea Agreement and pursuant to the Order of Forfeiture, BCCI forfeited all of its property interests in the United States. Pursuant to paragraph 1(e) of the Forfeiture Order, the corporate defendants forfeited to the United States their ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time (excluding property brought into the United States by or on behalf of Court–Appointed Fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates).

Attached to the First Order of Forfeiture was a listing of BCCI accounts, with corre-

---

1. "BCCI," as used herein, refers collectively to BCCI Holdings (Luxembourg) S.A., its two operating subsidiaries, Bank of Credit and Commerce International, S.A., and Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, an entity previously found to be the alter ego of the other BCCI entities.

sponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a First Supplemental Order on January 31, 1992, which directed immediate seizure of the specific assets listed therein. The Court later amended the Order of Forfeiture to include additional assets, including property set forth in Second, Third, Fourth and Fifth Supplemental Lists of Forfeited Property. *See* Order of Forfeiture of July 29, 1992 (Second Order of Forfeiture); Order of Forfeiture of August 19, 1993 (Third Order of Forfeiture); Fourth Order of Forfeiture (December 21, 1994); Fifth Order of Forfeiture (September 20, 1996). Attached to the Fifth Order of Forfeiture, which is relevant to the petitioners' L-Claims presently before the Court, was the Fifth Supplemental List of Forfeited Property.

The Plea Agreement also established the Worldwide Victims Fund and the U.S. Fund. Under the terms of the Plea Agreement, forfeited assets were to be disbursed in equal amounts to the Worldwide Victims Fund and the U.S. Fund. *See* Plea Agreement ¶ 11(c). The broad purpose of the Worldwide Victims Fund, operated by the Court-Appointed Fiduciaries, is to distribute funds "only to innocent depositors, creditors and other victims of BCCI whose claims are not derived directly or indirectly through violations of United States or other laws concerning narcotics, terrorism, money laundering, crimes of violence, or other acts generally recognized as felonies or similar crimes under the law of countries subscribing to recognized norms of international justice." *Id.* ¶ 14.

The purpose of the U.S. Fund is more specific, but no less compensatory. In addition to allowing for reimbursement of the costs of investigation and prosecution of BCCI, bank insurance and other matters, the U.S. Fund is also available to provide "restitution to victims of BCCI, which may include remission to the Court Appointed Fiduciaries in accordance with 18 U.S.C. § 1963(g) for the purpose of facilitating an increase in assets available for distribution by the Court–Appointed Fiduciaries to innocent worldwide victims of BCCI, and which may include claims related to the failure of Cen-Trust, if any." *Id.* ¶ 12(f). As a result of BCCI's guilty plea and the subsequent criminal forfeiture proceedings, by July 1996, the United States had "recovered nearly $800 million, virtually all of which has been, or will be, distributed to the victims of the fraud." Testimony of Stefan Cassella before the Judiciary Committee of the House of Representatives (July 22, 1996), 1996 WL 410099, *5 (F.D.C.H.).[2]

In compliance with 18 U.S.C. § 1963(*l*)(1) and to inform third parties of their potential rights to seek recovery of assets declared forfeited in the Fifth Order of Forfeiture, the United States published notice of the Order of Forfeiture, as amended, during the period from November 15, 1996 until December 23, 1996 in eleven major newspapers of general circulation including the *Wall Street Journal,* the *New York Times,* the *International Herald Tribune,* the *Los Angeles Daily Journal,* the *Washington Post,* and *USA Today.* *See* United States' Notice to the Court at 1 & Exhibit A (Docket No. 1800). In addition, personal notice was sent to 163 persons and entities. *Id.* Through a timely filed L-Claim, the BCCI Campaign Committee has asserted an interest property forfeited in the Fifth Round.

The Court assumes true the facts alleged in the BCCI Campaign Committee's L-Claim. The BCCI Campaign Committee was established in July 1991 "soon after the closure of BCCI and represents the interests of BCCI employees, many of whom are still unemployed after five years due primarily to the stigma associated with the BCCI name."

---

2. In 1995, over $225 million was disbursed to the Court Appointed Fiduciaries for the Worldwide Victims Fund. *See* Notice to the Court at 1 (filed Aug. 13, 1996). On August 1, 1996, the United States disbursed an additional $83,651,-863.24, *id.* at 2, and, on May 22, 1997, Attorney General Janet Reno "determined that the United States would transfer 100 percent of its share of the forfeited funds to the Worldwide Victims Fund so that the funds might be distributed to all BCCI victims equally on a pro rata basis." Notice to the Court at 2 (filed July 11, 1997).

L–Claim at 2.[3] The petitioner states that "BCCI employees have also suffered great financial hardship due to their trust monies which were denominated in United States [d]ollars being co-mingled with other BCCI assets in the United States." *Id.* Contending that BCCI misappropriated monies from the BCCI employees' Staff Benefit Fund and Provident Fund account, the petitioner asserts an interest in approximately $189,000,-000.

The United States and Court–Appointed Fiduciaries later filed the instant motion to dismiss, seeking dismissal on the grounds described below.[4]

### Discussion

BCCI's assets were forfeited pursuant to 18 U.S.C. § 1963,[5] which sets forth an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims. It permits any person, other than the defendant, claiming a legal interest in forfeited property to petition the Court for a hearing to adjudicate the validity of that interest. 18 U.S.C. § 1963(*l*)(2).[6] Section 1963(*l*)(6) sets forth the substantive elements that a third party must establish to obtain amendment of an order of forfeiture:

If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

18 U.S.C. § 1963(*l*)(6).

 A petitioner must first establish standing. Only by establishing standing and alleging the requisite elements of either § 1963(*l*)(6)(A) or § 1963(*l*)(6)(B) may a party obtain judicial relief from an order of forfeiture. *See United States v. BCCI Holdings (Luxembourg), S.A.,* 956 F.Supp. 5, 10 (D.D.C.1997); *United States v. BCCI Holdings (Luxembourg), S.A.,* 833 F.Supp. 32, 36 (D.D.C.1993), *aff'd,* 46 F.3d 1185, 1188

---

3. While noting the petitioner's statement here, the Court does not find it, by itself, sufficient to meet the obligation to demonstrate representational standing,

4. The petitioner did not file a brief in opposition or request oral argument.

5. 18 U.S.C. § 1963(a) provides, in relevant part:

Whoever violates any provision of section 1962 of this chapter shall ... forfeit to the United States, irrespective of any provision of State law—
(1) any interest the person has acquired or maintained in violation of section 1962;
(2) any—
(A) interest in;
(B) security of;
(C) claim against; or
(D) property or contractual right of any kind affording a source of influence over;
any enterprise which the person has established, operated, controlled, conducted, or par-

ticipated in the conduct of, in violation of section 1962; and
(3) any property constituting, or derived from, any proceeds which the person has obtained directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.
The court, in imposing sentence on such person shall order ... that the person forfeited to United States all property described in this subsection.

6. This provision provides:

Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (*l*), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

**20**

(D.C.Cir.), *cert. denied sub nom. Chawla v. United States,* 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *United States v. BCCI Holdings (Luxembourg), S.A.,* 833 F.Supp. 9, 13 (D.D.C.1993), *aff'd,* 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States,* 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *see also United States v. Schwimmer,* 968 F.2d 1570, 1584 (2nd Cir.1992); *United States v. Lavin,* 942 F.2d 177, 187 (3rd Cir.1991). If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See United States v. BCCI Holdings,* 956 F.Supp. at 10; *see also* S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983); *United States v. Campos,* 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean,* 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion,* 822 F.2d 62 (9th Cir. 1987).

■ A motion to dismiss under Fed. R.Civ.P. 12(b)(6) may be granted if it appears that the petitioner can prove no facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Kenneda v. United States,* 880 F.2d 1439, 1442 (D.C.Cir.1989). The Court accepts well-pleaded facts as true and construes the complaint liberally, granting a petitioner the benefit of any reasonable inferences that can be derived from the facts alleged. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1275 (D.C.Cir. 1994).

As an initial matter, Section 1963(*l*)(3) establishes the pleading requirements for an L–Claim. Under the statute, a claim must be filed by a "person" asserting an interest in specific property, and such petition must "be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property." 18 U.S.C. § 1963(*l*)(3).

■ To have standing, Section 1963(*l*)(2) requires a party to assert "a legal interest in property forfeited to the United States." This requirement is imposed to further the purpose of an L–Claim proceeding, which, while ancillary to the underlying criminal case, is intended to ensure that property forfeited to the United States was that of the defendant; it does not attempt to divide the defendant's estate among competing claimants. *See United States v. BCCI Holdings (Luxembourg), S.A.,* 814 F.Supp. 106, 110 (D.D.C.1993). This latter task is properly performed at a liquidation proceeding, where all parties without a "legal interest" in forfeited property can recover on a *pro rata* basis with the many other claimants to the debtor's estate. *Id.* at 111; *see Downriver Community Fed. Credit Union v. Penn Square Bank,* 879 F.2d 754 (10th Cir.1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); *First Empire Bank–New York v. F.D.I.C.,* 572 F.2d 1361 (9th Cir.1978), *cert. denied,* 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).

■■ The critical inquiry in an L–Claim proceeding is, therefore, ownership of the disputed funds. As recognized by this Court and most, if not all, other courts addressing the issue, an unsecured creditor does not possess an interest in any specific asset of a debtor and merely has a general interest in the debtor's entire estate. *See United States v. BCCI Holdings (Luxembourg), S.A.,* 46 F.3d at 1191; *United States v. BCCI Holdings,* 956 F.Supp. at 10; *see also Schwimmer,* 968 F.2d at 1581; *Campos,* 859 F.2d at 1240; *United States v. Reckmeyer,* 836 F.2d 200, 206 & n. 3 (4th Cir.1987); *Mageean,* 649 F.Supp. at 828. Because a general creditor is unable to assert an interest in a specific asset, it cannot assert a legal right, title, or interest "in property which has been ordered forfeited" as required by § 1963(*l*)(2), at least in situations where, like here, a defendant's entire estate is not subject to forfeiture. *United States v. BCCI Holdings (Luxembourg), S.A.,* 46 F.3d at 1191; *see Reckmeyer,* 836 F.2d at 206 n. 3 ("It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who

attempt to contest ... forfeitures."). Accordingly, absent a showing of an interest in asset, the petitioners would lack standing to assert proceedings.

 Examined in this light, the BCCI Campaign Committee's L–Claim will be dismissed. First, the L–Claim has not satisfied the statutory pleading requirements. While BCCI Campaign Committee's legal status and representational authority to assert the instant petition are unclear, it is clear that the L–Claim has not been executed under penalty of perjury. Second, assuming that the petitioner is a victim of BCCI's fraud, it has, at most, a cause of action, making its status no greater than that of a general creditor. And, it is the law of this Circuit that general creditors lack standing to file petitions in L–Claim proceedings. *U.S. v. BCCI Holdings (Luxembourg), S.A.,* 833 F.Supp. 9, 15 (D.D.C.1993), *aff'd,* 46 F.3d 1185, 1191 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States,* 515 U.S. 1160, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). Consequently, because it can assert neither an interest in a specific asset nor one that arose prior to commission of the criminal acts giving rise to the forfeiture of the defendants' estate, the BCCI Campaign Committee's petition would fail on the merits. Finally, to the extent the petitioner is importuning the Court to impose a constructive trust, the Court will once again decline the invitation. *Id.* at 14.

The BCCI Campaign Committee may have a claim that the Worldwide Victims Fund will recognize. However, it has neither standing to file a petition before this Court nor has it stated a claim upon which relief can be granted.

## CONCLUSION

Accordingly, it is hereby

**ORDERED** that the joint motion to dismiss is granted. The L–Claim of the BCCI Campaign Committee is dismissed. Judgment will be entered separately in accordance with Fed.R.Civ.P. 58.

IT IS SO ORDERED.